IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS A. SUAREZ

    Plaintiff(s)

    v.

U.S. POSTAL SERVICE

    Defendant(s)

CIVIL NO. 98-1854 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Plaintiff Luis A. Suarez ("Suarez") brought suit against the United States Postal Service ("USPS"), its Postmaster General, William J. Henderson, and the American Postal Workers Union, Caribbean Area Local, d/b/a Puerto Rico Area Local ("APWU"), pursuant to § 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 101 et seq.. Suarez seeks enforcement of an arbitration decision awarding him, among other things, reinstatement and back pay. Suarez challenges the method used by USPS to calculate the back pay awarded to him. Pending before the Court is USPS's motion for summary judgment. (Docket No. 47). Upon review of the record, the Court concludes that Suarez has not exhausted his administrative remedies, and grants USPS's motion.



AO 72A
(Rev.8/82)

Civil No. 98-1854 (JAG) 2

**FACTUAL BACKGROUND**

On July 23, 1998, Suarez filed suit, alleging that USPS violated § 1208(b) by breaching the collective bargaining agreement when it delayed payment of back pay to which he was entitled as a result of a favorable arbitration decision. (Docket No. 20 at 4.) Suarez claimed that the delay forced him, among other things, to declare bankruptcy, incur needless litigation expenses, and become delinquent in his child support payments. In his opposition, however, Suarez withdrew his claims for compensatory damages under ¶¶ 19(b), (c), (d), and (e) of his Second Amended Complaint (Docket No. 20), and acknowledged that his entitlement to damages was "solely limited to back pay, interest and attorneys' fees...." (Docket No. 53 at 2.)

On November 26, 1997, arbitrator Joseph S. Cannavo, Jr. ("Arbitrator Cannavo") issued a decision in Suarez's favor. The award required USPS to reinstate Suarez to a position for which he would be qualified with full seniority and back pay. (Docket No. 20 at 3-4.) As a result of that decision, Suarez was entitled to back pay from March 30, 1997, the effective date of his removal, to November 26, 1997, the date on which he was reinstated to the

Civil No. 98-1854 (JAG)                                                          3

position of part-time flexible letter carrier.[1] (Docket No. 47 at 3.)

While working as a part-time flexible letter carrier, Suarez initiated the necessary procedures to receive his back pay. Section 436 of the USPS's Employment and Labor Relations Manual sets forth the procedure for payment of back pay claims in situations where an employee is reinstated as a result of an arbitrator's decision. The procedure requires USPS to prepare two pre-printed forms: (1) "Employee Statement to Recover Back Pay," (P.S. Form 8038), and (2) "Back Pay Decision/Settlement Worksheet" (P.S. Form 8039). (Docket No. 47, Statement of Uncontested Material Facts, at 3.)  P.S. Form 8038 required Suarez to state what attempts, if any, he made to obtain work during the back pay period. The Form also required Suarez to report any unemployment compensation benefits he received during the back pay period. Typically, the USPS incorporates the information provided in P.S.

---

[1] Following his reinstatement, Suarez initiated a new grievance process before Arbitrator Cannavo. Suarez claimed that that he should have been retained in the clerk craft position instead of the carrier craft position to which he was assigned. Suarez claimed that USPS treated him in disparate and discriminatory fashion. On May 7, 1999, Arbitrator Cannavo issued a ruling in Suarez's favor. The decision noted that USPS had not dealt with Suarez in a forthright manner following his reinstatement, and awarded Suarez an opportunity for window training, to which he was entitled. Suarez also received the opportunity to be assigned to a full-time carrier position in the event he failed the window training. (Docket No. 30, Exh. 2.)

Civil No. 98-1854 (JAG)                                                              4

Form 8038 into P.S. Form 8039 so that it may compute the recipient's back pay accurately.

On February 12, 1998, Juan Torres, the Officer-in-Charge of the Rio Grande Post Office, provided Suarez a copy of P.S. Form 8038. In a letter dated February 17, 1998, Suarez informed Torres that he would not complete the form because it requested information regarding his efforts to obtain employment during the back pay period. Suarez claimed that because the USPS had not raised the issue of mitigation of damages at the arbitration hearing, it was precluded from raising it during the processing of his back pay claim.

In a February 25, 1998 written response, Torres informed Suarez that he was not aware whether the USPS had raised the mitigation issue at the hearing, but explained that he regarded the issue as irrelevant because the "USPS is not disputing [your] monetary award." Torres stated that he needed Suarez's cooperation in filling out the form in order to process the back pay claim. Suarez, however, did not fill out the form.

On July 20, 1998, following a July 8, 1998 conversation with Torres, Suarez produced a completed P.S. Form 8038. After receiving P.S. Form 8038, Beda Velazquez, a USPS labor relations specialist for the Caribbean District, asked Suarez to sign P.S. Form 8039 to expedite the processing of his back pay claim. On July 23, 1998, Suarez filed suit before this Court.

Civil No. 98-1854 (JAG)                                                              5

In June, 1999, Suarez received back pay in the amount of $32,331 and $2,665.87 in interest. The USPS did not offset from Suarez's back pay award any interim earnings or unemployment compensation benefits.

## DISCUSSION

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A properly supported motion can be survived only if the non-moving party shows that a trial worthy issue exists. The party opposing the motion cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every controversy is sufficient to preclude summary judgment. The fact has to be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of a suit. The issue is "genuine" when a reasonable jury could

Civil No. 98-1854 (JAG)                                                    6

return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252.  Consequently, in order to defeat the motion, the party opposing summary judgment must present competent evidence supporting its position. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  To make this assessment in a given case, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). When carrying out that task, the Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F. 2d 5, 8 (1st Cir. 1990).

A.  **Arbitration and Back Pay**

Suarez claims that the USPS failed to pay his back pay in timely fashion, and he also claims that the Union declined to seek enforcement of the arbitration award in federal district court in order to recover his back pay. Additionally, Suarez claims that the USPS did not pay him properly, since it miscalculated the amount of back pay by relying on the hours of an "atypical" USPS employee. (Docket No. 53 at 3.)

Civil No. 98-1854 (JAG)                                                          7

He contends that the Court has jurisdiction to entertain his claim that the USPS breached the collective bargaining agreement by failing to pay him his full back pay and interests. Since he has not shown that he has exhausted administrative remedies, the Court disagrees.

Suarez contends that his back pay claim is governed by the Back Pay Act, 5 U.S.C. § 5596, and not by § 436.425 of the Employee and Labor Relations Manual. (Docket No. 53 at 2.) USPS argues that the Back Pay Act does not apply because Suarez's original back pay claim was not heard before the Merit Systems Protection Board, but rather was handled by the grievance arbitration procedure of the collective bargaining agreement. Suarez has not provided support to rebut the USPS's position that MSPB decisions do not control in the context of grievance arbitration decisions rendered pursuant to a collective bargaining agreement. See, e.g., Miller v. USPS, 792 F. Supp. 4, 7 (D.N.H. 1992), aff'd, 985 F.2d 9 (1 st Cir. 1993)(applying the ELM provisions to an arbitration decision).

Even if the Back Pay Act did apply here, the USPS contends that Suarez has failed to exhaust arbitration and grievance procedures pursuant to the collective bargaining agreement.[2] Indeed, Suarez has not proffered a persuasive rationale as to why

---

[2]Suarez further contends that he had no duty to mitigate damages. Even if he did, it is uncontested that the USPS did not offset his back pay award in any manner.

Civil No. 98-1854 (JAG)                                                      8

he should not be required to exhaust administrative remedies and to pursue his grievance through the collective bargaining agreement.

The four principles to be considered when reviewing an arbitration award pursuant to a collective bargaining agreement stem from the Steelworkers Trilogy of cases decided by the United States Supreme Court in 1960. See Newspaper Guild of Salem v. Ottaway Newspaper, 79 F.3d 1273, 1279 (1st Cir. 1996)(citing AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 648-51 (1986)). The four principles can be summarized as follows: (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit; (2) the question whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the merits of the underlying claims; and (4) where the contract contains an arbitration clause, there is a presumption of arbitrability.

After reviewing the record, the Court finds that the parties had agreed that arbitration would be the appropriate forum for settlement of all claims arising under the Collective Bargaining Agreement. The Agreement at issue here contains a broad arbitration clause that provides for arbitration in all situations that "involve the interpretation, application of, or compliance

Civil No. 98-1854 (JAG)                                                          9

with the provisions of this Agreement." <u>See</u> Collective Bargaining Agreement Article 15(1)(defining "grievance" as "a dispute, disagreement or complaint between the parties related to wages, hours and conditions of employment").

In the period between Suarez's reinstatement (November 26, 1997) and July, 1999, Suarez brought this action, seeking enforcement of the terms of the initial arbitration award. Since USPS issued Suarez two checks in July, 1999 covering back pay and accrued interest, the issue left to resolve is whether Suarez received the amounts to which he was duly entitled. The propriety of the amount of back pay awarded is a matter subject to the grievance procedure established in the Collective Bargaining Agreement. Under the terms of the Agreement, Suarez is required to submit his grievance to arbitration.

In cases such as this one, the Supreme Court has stated that, in the absence of any express provision excluding a particular grievance from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. <u>See</u> <u>AT&T Tech., Inc.</u>, 475 U.S. at 650 (<u>citing</u> <u>United Steelworkers of Am. v. Warrior & Gulf N. Co.</u>, 363 U.S. 574, 585 (1960)). The Court should not decline to order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers</u>, 363 U.S. at 582-83. No such evidence has been

presented here. Aside from the matters that the parties specifically exclude, all issues on which the parties disagree are included within the scope of the grievance provisions of the collective bargaining agreement. Id. at 581.

## CONCLUSION

In light of the foregoing, the Court finds that Suarez has failed to exhaust the grievance proceedings under the Collective Bargaining Agreement. The amount of back pay due Suarez should be determined by that procedure. Accordingly, the Court grants USPS's motion for summary judgment. Judgment shall enter dismissing the Complaint without prejudice.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 12th day December 2001.

JAY A. GARCIA GREGORY
United States District Judge